UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Troy K. Scheffler,

        Plaintiff,　　　　　　　　　　Court File No. 19-cv-1751 (MJD/LIB)

  v.　　　　　　　　　　　　　　　　**REPORT AND RECOMMENDATION**

First National of Nebraska, Inc., et al.,

        Defendant.

This matter comes before the undersigned United States Magistrate Judge upon Defendant First National Bank of Omaha's Motion to Dismiss. [Docket No. 12]. Defendant's Motion was referred to the undersigned by the Honorable Michael J. Davis. (Order of Reference [Docket No. 19]). The Court held a Motion Hearing on November 19, 2019.[1]

For the reasons discussed herein, the Court recommends that Defendant First National Bank of Omaha's Motion to Dismiss, [Docket No. 12], be **GRANTED** and that Counts II–VIII and the class allegations, as alleged against Defendant First National Bank of Omaha in the above captioned matter, be **DISMISSED without prejudice.**[2]

---

[1] Plaintiff did not appear at the hearing.

[2] "[T]he Eighth Circuit and this Court generally favor dismissals under Rule 12(b)(6) without prejudice, at least where there is no evidence of persistent pleading failures." Oberg v. Shapiro, No. 15-cv-3678 (PJS/SER), 2016 WL 4501354, at *12 (D. Minn. Aug. 1, 2016), report and recommendation adopted by 2016 WL 4497754 (D. Minn. Aug. 26, 2016) (quoting Holmseth v. E. Grand Forks, No. 14-2970 (DWF/LIB), 2015 WL 4488424, at *20 (D. Minn. July 23, 2015)). Nonetheless, when a complaint is so deficient or defective that the court is convinced that its defects cannot be cured through re-pleading, dismissal with prejudice is appropriate. See, McLean v. United States, 566 F.3d 391, 400 (4th Cir. 2009) ("to the extent . . . that a district court is truly unable to conceive of any set of facts under which a plaintiff would be entitled to relief, the district court would err in designating [a] dismissal to be without prejudice. Courts, including this one, have held that when a complaint is incurable through amendment, dismissal is properly rendered with prejudice and without leave to amend."); McKesson HBOC, Inc. v. N.Y. State Common Ret. Fund, Inc., 339 F.3d 1087, 1096 (9th Cir. 2003) (dismissal with prejudice is appropriate where "deficiencies in [plaintiff's] claims cannot be cured by amendment"). The latter circumstance is not the case here. This Court cannot conclude that it is "truly unable to conceive of any set of facts under which [Plaintiff] would be entitled to relief." See, McLean, 566 F.3d at 400. As such, the Court cannot hold that the "defects cannot be cured through re-pleading." See, Id. A pro se litigant should be given chance to amend a Complaint unless it is "absolutely clear that the deficiencies of the complaint could not be cured by amendment." (Cato v. United States, 70 F.3d 1103, 1106 (9th Cir. 1995). Accordingly,

## I.   BACKROUND AND STATEMENT OF ALLEGED FACTS[3]

On February 17, 2017, Plaintiff called "Defendant"[4] and informed Defendant that its automated telephone equipment was incessantly calling his cellular phone and leaving messages. (Am. Compl. [Docket No. 9] ¶¶ 5–7). "Plaintiff demanded that Defendant stop using his cellular phone number to contact him." (Id. ¶ 8). Defendant "stated to Plaintiff that he would not receive any further calls." (Id. ¶ 11). Subsequently, Defendant called Plaintiff's cellular phone on at least five occasions. (Id. ¶ 12).

On or about March 30, 2018, Plaintiff received "a debt assignment notice" from First National Bank of Omaha ("FNBO"). (Id. ¶ 13). The notice stated that, on March 30, 2018, Absolute Resolutions Investments, LLC ("ARI") had purchased "a debt with an account ending with 9228" which was previously owed by Plaintiff to FNBO. (Id.). The notice also stated that "[t]his is not a bill," instructed Plaintiff not to send future payments to FNBO, informed Plaintiff that already-sent payments would be forwarded to ARI, and instructed Plaintiff to direct questions about his account balance to ARI. (Id. ¶¶ 14–15). In addition, the notice stated that "Absolute Resolutions Investments, LLC is prohibited from reselling your account to an entity other than to and[sic] affiliated entity, to First National Bank of Omaha, or to another entity with approval of First National bank of Omaha." (Id. ¶ 16 (alteration in original)).

---

the Court recommends that Plaintiff's claims be dismissed without prejudice. See, e.g., Favors v. Bank, No. 18-cv-3187 (JNE/LIB), 2019 WL 3769710, at *5–7 (D. Minn. June 28, 2019), report and recommendation adopted by 2019 WL 3767533 (D. Minn. Aug. 9, 2019) (granting the defendant's 12(b)(6) motion to dismiss and dismissing the plaintiff's FDCPA claims without prejudice where the plaintiff failed to allege the defendant was a "debt collector").
[3] Unless indicated otherwise, the facts in this section come from the allegations within Plaintiff's Amended Complaint. [Docket No. 9].
[4] Plaintiff's Amended Complaint refers to "Defendant" in pleading the alleged TCPA violations, as he did not amend the allegations from his original Complaint, [Docket No. 1-1], to consider multiple defendants. (Id. ¶¶ 5–7, 67–70).

On April 16, 2019, Plaintiff emailed in-house counsel for Defendants First National of Nebraska and FNBO, notifying them that they had violated the TCPA. (Id. ¶ 18). Plaintiff received no response. (Id. ¶ 19).

On or about April 24, 2019, Plaintiff received a "debt assignment notice" from FNBO. (Id. ¶ 25). The notice stated that, on April 24, 2019, Crown Asset Management, LLC ("CAM") had purchased "a debt with an account number ending in 7380" which was previously owed by Plaintiff to FNBO. (Id.). The notice also stated that "[t]his is not a bill," instructed Plaintiff not to send future payments to FNBO, informed Plaintiff that already-sent payments would be forwarded to CAM, and instructed Plaintiff to direct questions about his account balance to CAM. (Id. ¶¶ 26–27). The notice did not, however, include the prohibition on reselling the debt that was included in the previous notice regarding account ending 9228. (See, Id. ¶ 28).

On April 26, 2019, Plaintiff both emailed and mailed via USPS his original Complaint to Defendant First National of Nebraska and Defendant FNBO. (Id. ¶ 20). Plaintiff received no response. (Id. ¶ 21).

On April 29, 2019, "FNBO, 'recalled' [the] account [ending in 9228] from ARI." (Id. ¶ 22). The same day, ""FNBO, 'recalled' [the] account [ending in 7380] from CAM." (Id. ¶ 29). "[N]either CAM nor ARI sent Plaintiff notice of the sale or assignment of the alleged debts." (Id. ¶ 34).

On June 12, 2019, Plaintiff filed his original Complaint pro se in Crow Wing County alleging that Defendant First National of Nebraska violated the TCPA by calling Plaintiff's cellular phone after he had withdrawn consent. (Compl. [Docket No. 1-1]).

On July 2, 2019, Defendant First National of Nebraska, Inc., represented by Goerlitz Law, PLLC, removed the case to Federal Court. (Notice of Removal [Docket No. 1]). The same day,

3

Plaintiff received a call from Goerlitz Law, PLLC, "who claimed to be representing [First National of Nebraska] and by extension FNBO." (Am. Compl. [Docket No. 9] ¶¶ 38–39). Defendant Goerlitz Law told Plaintiff that First National of Nebraska "was the incorrect defendant in this instant suit as they only owned FNBO." (Id. ¶ 40). During that call, Goerlitz Law "claimed that Plaintiff only ceased auto dialer calls on one account and that Plaintiff only gave one account number." (Id. ¶ 43).

Subsequently, Goerlitz Law communicated numerous times with Plaintiff via telephone and email. (Id. ¶ 44). On July 23, 2019, Goerlitz Law "email[ed] Plaintiff that there were '…amounts outstanding on both the credit cards'" and communicated with Plaintiff "via phone concerning alleged debts owed to FNBO." (Id. ¶¶ 47–48). "Goerlitz Law did not disclose they were a debt collector" in any of these conversations. (Id. ¶¶ 45, 48).

On July 24, 2019, "Goerlitz Law mailed a 'validation notice' to Plaintiff disclosing that they were in fact a 3rd party debt collector." (Id. ¶ 49). On July 31, 2019, "Plaintiff received a phone call from Goerlitz Law in which they failed to identify themselves as a debt collector" and "stated that due to this instant suit that FNBO was going to counterclaim in this instant suit to collect on the alleged outstanding debts." (Id. ¶ 53–54). Also, on July 31, 2019, Plaintiff sent a "cease and desist of collection activities" to Goerlitz Law via email. (Id. ¶ 61).

On August 13, 2019, Defendant filed his Amended Complaint. (Am. Compl. [Docket No. 9]). In the Amended Complaint, Plaintiff added Defendants FNBO and Goerlitz Law, PLLC. (Id.). Plaintiff also added several claims under the FDCPA. (Id.).

Plaintiff's Amended Complaint alleges eight individual causes of action and one on behalf of a class. (Id.). Count I consists of Plaintiff's original TCPA allegations.[5] Counts II–VIII, as well

---

[5] This claim is excluded from the instant motion. (Mem. in Supp. [Docket No. 14], at 1 n.1).

4

as, the "class allegations" are brought under the FDCPA. (See, Am. Compl. [Docket No. 9] ¶¶ 71–124).

As relevant to the instant 12(b)(6) motion, in Counts II, III, V, VII, and the "class allegations," Plaintiff asserts that FNBO is directly liable for various FDCPA violations.[6] (See, Id. ¶¶ 71–79, 83–88, 92–98, 103–24). In Counts IV, VI, and VIII, Plaintiff asserts that FNBO is vicariously liable for various FDCPA violations committed by Goerlitz Law. (See, Id. ¶¶ 39, 42, 60, 66, 80–82, 89–91, 99–102).

## II.   DEFENDANT FIRST NATIONAL BANK OF OMAHA'S MOTION TO DISMISS [Docket No. 9][7]

On September 25, 2019, Defendant FNBO filed the present Motion to Dismiss.[8] [Docket No. 12]. FNBO argues that "the FDCPA does not apply to FNBO" as FNBO "is collecting debts due to the bank and not 'another' as required to be a 'debt collector' under the FDCPA." (Mem. in Supp. [Docket No. 14], at 2). Therefore, Plaintiff has failed to state a claim upon which relief can be granted under the FDCPA. (Id.).

---

[6] These claims are based on Plaintiff's assertion that the March 30, 2018, and April 24, 2019, assignment notices (together, the "Assignment Notices") falsely represented that the debts had been permanently sold to ARI and CAM when, in actuality, the debts could be recalled by FNBO and First National of Nebraska "at a whim." (See, Id. ¶¶ 71–79, 83–88, 92–98). Plaintiff alleges that this was intended to initiate contact, gather information, and coerce payment of the debt. (See, Id.).

[7] Plaintiff argues that FNBO's Motion to Dismiss, [Docket No. 12], is improperly before the Court because FNBO failed to meet and confer in good faith prior to filing the motion and thus did not comply with the requirements of Local Rule 7.1. (Mem. in Supp. [Docket No. 26], at 9–13). However, a party is not required to meet and confer before filing a Rule 56 motion for summary judgment, and the present dispositive motion is analogous to a motion for summary judgment. See, L.R. 7.1(a). Moreover, it is within the Court's discretion to consider a motion that does not comply with Local Rule 7.1's meet-and-confer requirement. See, e.g., Daywitt v. Minn. Dep't of Human Servs., No. 17-cv-5574 (NEB/TNL), 2019 WL 1417451, at *3 (D. Minn. Mar. 29, 2019). Here, FNBO attempted to meet and confer with Plaintiff by email, but Plaintiff did not respond. (Meet-and-Confer Statement [Docket No. 16]). In addition, Plaintiff has not indicated that he would have voluntarily dismissed the claims against FNBO, hence any further efforts to meet and confer would have been meaningless. Accordingly, the Court chooses to exercise its discretion and to consider FNBO's Motion to Dismiss. [Docket No. 12].

[8] At the Motion Hearing, Defendant FNBO stated that its Motion to Dismiss, [Docket No. 12], requests the dismissal of all FDCPA claims as alleged against FNBO whether asserted through a theory of direct or vicarious liability.

### A. Standard of Review

To state a cause of action that will survive a Rule 12(b)(6) motion, a complaint must allege a set of facts, which, if proven true, would entitle the plaintiff to legal redress against the named defendants under an established legal theory. Martin v. Aubuchon, 623 F.2d 1282, 1286 (8th Cir. 1980). In short, "the complaint must allege facts, which if true, state a claim as a matter of law." Id. When deciding a Rule 12(b)(6) motion to dismiss, a court generally may not consider materials outside the pleadings and assumes all facts alleged in the complaint are true, construing all reasonable inferences from those facts in the light most favorable to the complainant. Noble Sys. Corp. v. Alorica Cent., LLC, 543 F.3d 978, 982 (8th Cir. 2008); Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986). In doing so, however, a court need not accept as true wholly conclusory allegations, Hanten v. Sch. Dist. of Riverview Gardens, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader. Westcott v. City of Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." Ashcroft v. Iqbal, 556 U.S. 662, 555 (2009). When courts undertake the "context-specific task" of determining whether a plaintiff's allegations "nudge" its claims against a defendant "across the line from conceivable to plausible," they may disregard legal conclusions that are couched as factual allegations. See, Iqbal, 556 U.S. at 678–81. Although the factual allegations in the complaint need not be detailed, they must be sufficient to "raise a right to relief above the speculative level," which "requires more than labels and conclusions, and a formulistic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555.

6

In addition:

> A violation of the FDCPA is reviewed utilizing the unsophisticated-consumer standard which . . . protects the uninformed or naïve customer, yet also contains an objective element of reasonableness to protect debt collectors from liability for peculiar interpretation of collection [attempts]. The unsophisticated consumer test is a practical one, and statements that are merely susceptive of an ingenious misreading do not violate the FDCPA.

Heroux v. Callidus Portfolio Mgmt. Inc., No. 17-cv-5132 (DSD/HB), 2018 WL 2018069, *4 (D. Minn. May 1, 2018) (citations and quotations omitted).

"A document filed pro se is to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standard than formal pleadings drafted by lawyers." Erikcon v. Pardus, 551 U.S. 89, 94 (2007) (citation omitted). Nonetheless, "[a]lthough pro se pleadings are to be construed liberally, pro se litigants are not excused from failing to comply with substantive and procedural law." Burgs v. Sissel, 745 F.2d 526, 528 (8th Cir. 1984); see also, Martin v. Aubuchon, 623 F.2d 1282, 1286 (8th Cir. 1980). Additionally, "[t]hough pro se complaints are to be construed liberally, they still must allege sufficient facts to support the claims advanced." Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004) (citations omitted); see also, Dunn v. White, 880 F.2d 1188, 1197 (10th Cir. 1989) (regarding a pro se plaintiff, "we will not supply additional facts, nor will we construct a legal theory for plaintiff that assumes facts that have not been pleaded"); Cunningham v. Ray, 648 F.2d 1185, 1186 (8th Cir. 1981) ("[P]ro se litigants must set [a claim] forth in a manner which, taking the pleaded facts as true, states a claim as a matter of law.").

B. Analysis

i. Direct Liability

In Counts II, III, V, VII, and the "class allegations," Plaintiff asserts that FNBO is directly liable for various FDCPA violations. (See, Am. Compl. [Docket No. 9] ¶¶ 71–79, 83–88, 92–98, 103–24).

Congress enacted the FDCPA to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). To establish a violation of the FDCPA, a plaintiff must, as a threshold matter, demonstrate that the defendant is a "debt collector." Lansing v. LPS Field Servs., Inc., No. 13-655 (MJD/AJB), 2013 WL 5436913, at *4 (D. Minn. Sept. 26, 2013). Therefore, to survive a Rule 12(b)(6) Motion to Dismiss, Plaintiff must plead sufficient facts to demonstrate that Defendant FNBO is a "debt collector." See, Id.

The FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debt" or in the alternative, any person who "regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."[9] 15 U.S.C. § 1692a(6). However, the FDCPA specifically excludes from the definition of "debt collector . . . any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . concerns a debt which was originated by such person." 15 U.S.C. §

---

[9] Plaintiff argues that "to meet the FDCPA's definition of debt collector, one must merely collect 'indirectly' a debt asserted." (See, Mem. in Opp'n [Docket No. 26], at 5). Plaintiff's assertion seems to be based on the "directly or indirectly" language contained in the FDCPA's second definition of "debt collector," however, Plaintiff ignores that one would also have to regularly seek to collect the debts of another. See, 15 U.S.C. § 1692a(6); (see also, Mem. in Opp'n [Docket No. 26], at 5). Therefore, Plaintiff's argument is contrary to existing law and, as such, the Court finds it unpersuasive.

1692a(6)(F)(ii). Notwithstanding the exclusion of those who originate debts, the definition of "debt collector" also includes "any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third persons is collecting or attempting to collect such debts." 15 U.S.C. § 1692a(6).

The FDCPA defines "creditor" as "any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that" person "receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another." 15 U.S.C. § 1692a(4). "A distinction between creditors and debt collectors is fundamental to the FDCPA, which does not regulate creditors' activities at all." Heroux v. Callidus Portfolio Mgmt. Inc., No. 17-5132 (DSD/HB), 2018 WL 2018069, at *3 (D. Minn. May 1, 2018) (quoting Schmitt v. FMA All., 398 F.3d 995, 998 (8th Cir. 2005)).

Therefore, to survive the present 12(b)(6) Motion to Dismiss, Plaintiff must have pleaded sufficient facts to demonstrate FNBO is a debt collector by showing: (1) FNBO's principle purpose is debt collection; (2) FNBO regularly seeks to collect debts owed to another that were not originated by FNBO; or (3) FNBO used a false name in the collection of its own debts. See, 15 U.S.C. § 1692a(6).

The first definition of a "debt collector" requires a demonstration of facts showing that the defendant's principal business activity is debt collection. Tusen v. M&T Bank, No. 16-cv-4339 (PAM/KMM), 2017 WL 4990527, at *2 (D. Minn. Oct. 31, 2017). It is insufficient to assert simply that one of the defendant's business activities is debt collection; it must be the defendant's principal business activity. See, Id.; see also, 15 U.S.C. § 1692a(6).

Here, Plaintiff does not allege that Defendant FNBO's "principal purpose" or principal business activity is debt collection. (See, Am. Compl. [Docket No. 9]). Nor has Plaintiff pleaded

9

facts from which the Court can reasonably infer FNBO's principle business activity is debt collection. (See, Id.). Therefore, Plaintiff has not demonstrated FNBO is a "debt collector" under the under the first definition. See, 15 U.S.C. § 1692a(6); Tusen, 2017 WL 4990527, at *2.

The second definition of "debt collector" requires a demonstration of facts showing that the defendant regularly seeks to collect debts owed to another. See, Henson v. Santander Consumer USA Inc., 137 S. Ct. 1718, 1721 (2017). In addition, the second definition further requires a demonstration of facts showing that the defendant was not the originator of the debt. 15 U.S.C. § 1692a(6)(F)(ii) (creating an exemption for original lenders).

Here, Counts II, III, V, VII, and the "class allegations" of Plaintiff's Amended Complaint, which assert FNBO is directly liable for FDCPA violations, are premised on the assertion that Plaintiff deceptively retained control over the debts despite representing that they had been sold. (See, Am. Compl. [Docket No. 9] ¶¶ 71–79, 83–88, 92–98, 103–24). In liberally construing Plaintiff's Amended Complaint it is somewhat unclear whether Plaintiff is alleging that: (a) title to the debts was never transferred to ARI and CAM, thus the Assignment Notices were deceptive; or (b) title to the debts was indeed transferred to ARI and CAM, but FNBO acted deceptively by not disclosing in the Assignment Notices that it retained the right to recall the debts. (See, Id.). In his opposition to the present motion, Plaintiff seems to argue both. (See, Mem. in Opp'n [Docket No. 26]).

If Plaintiff is alleging that title to the debts was never transferred to ARI and CAM, then Plaintiff has not demonstrated FNBO is a "debt collector" under the second definition because Plaintiff has not pleaded facts showing that FNBO ever, much less regularly, sought to collect debts owed to another. See, 15 U.S.C. § 1692a(6); Henson, 137 S. Ct. at 1721.

10

If Plaintiff is alleging that title to the debts transferred to ARI and CAM then transferred back to FNBO,[10] Plaintiff has still not demonstrated that FNBO is a debt collector as defined by the FDCPA because FNBO was the originator of the debts. See, 15 U.S.C. § 1692a(6).

As relevant to this inquiry, Plaintiff alleges that FNBO is a subsidiary of First National of Nebraska, the debts were "alleged to be previously owed by Plaintiff to FNB[O]," FNBO "sold" the debts to ARI and CAM but "deceptively retain[ed] proxy and authority over the account," "FNBO did send assignment letters for 2 alleged debts to Plaintiff," FNBO "recalled" the debts, FNBO hired Goerlitz Law as a third-party debt collector, Goerlitz Law acted under the direction of FNBO, and "Goerlitz Law spoke with Plaintiff via phone concerning alleged debts owed to FNBO." (Am. Compl. [Docket No. 9] ¶¶ 4.1–4.2, 13, 17, 22, 25, 29, 42, 47, 60, 71, 80, 83–84, 92).

The only reasonable inference that can be drawn based on these allegations, is that FNBO originated the debts. (See, Id.). Plaintiff has made no allegations to the contrary. (See, Am. Compl. [Docket No. 9]). Nor has Plaintiff pleaded any facts that indicate any entity possessed title to the debts prior to FNBO, or upon which the Court can reasonably draw such an inference. (See, Id.). Therefore, Plaintiff has not demonstrated that FNBO is a debt collector under the second definition. See, Estate of Engenious Coles v. Zucker, Goldberg & Ackerman, 658 Fed. App'x 108, 111 (3d Cir. 2016) (finding dismissal was proper where the "[a]ppellant provided no argument as to why the originator exemption d[id] not apply"); Sandoval v. Wolfe, No. 16-61856-CIV-DIMITROULEAS, 2017 WL 244111, at *5, (S.D. Fla. Jan. 19, 2017) (holding that the loan

---

[10] To the extent Plaintiff argues in his Memorandum in Opposition, [Docket No. 26], that FNBO is currently a third party because Plaintiff has not received notification that FNBO "repurchased" the accounts, Plaintiff's argument is not supported by the pleadings. (See, Am. Compl. [Docket No. 9]). Plaintiff alleges in his Amended Complaint that the debts were sold to ARI and CAM on March 30, 2018, and April 24, 2019, respectively, and recalled by FNBO on April 29, 2019. (Am. Compl. [Docket No. 9] ¶¶ 22, 29). For purposes of the present motion, those allegations are assumed to be true. See, Noble Sys. Corp., 543 F.3d at 982; Morton, 793 F.2d at 187.

11

originator exemption applied where the debt was assigned to a third party then assigned back to the originator).

The third definition of "debt collector" requires a demonstration of facts showing that the defendant used a false name in the collection of its own debts. 15 U.S.C. § 1692a(6). "A creditor uses a name other than its own when 'it uses a name that implies that a third party is involved in collecting its debts, "pretends to be someone else," or "uses a pseudonym or alias."'" Medica Self-Insured v. Tenet Healthcare Corp., No. 06-4747 (DWF/AJB); 2007 WL 1385589, at *3 (D. Minn. May 4, 2007) (quoting Maguire v. Citicorp Retail Servs., Inc., 147 F.3d 232, 235 (2d Cir. 1998); see also, A.W. v. Preferred Platinum Plan, Inc., 923 F. Supp. 2d 1168, 1171 (D. Minn. 2013) ("[C]reditors hiding behind false names when attempting to collect their own debts may be subject to liability under the FDCPA as 'debt collectors.' This exception aims to protect consumers from deceitful creditors that use different names to do business and to collect their own debt." (citations and quotations omitted)).

As relevant to this inquiry, Plaintiff alleges that "in the sale of both accounts, FNBO and FNN established the alleged debts to be worth pennies on the dollar," "both ARI and CAM innocently believed that both alleged debts were purchased for value," and "Defendants were aware of this present suit when selling the alleged debt to CAM." (Id. ¶¶ 32, 36, 94). Plaintiff further alleges that FNBO "recalled" the debts, "FNBO gave no reason to [ARI and CAM] as to the recall," "in 'recalling' the accounts that FNBO and FNN offered no consideration to either CAM or ARI," "FNBO unlawfully 'recalled' the accounts in opposition to contract, tax, banking, or other finance laws," and "the 'sale' and then their intended recall would constitute fraud." (Id. ¶¶ 22–23, 29–30, 33, 35, 37). In addition, Plaintiff alleges that the Assignment Notices stated ARI and CAM had purchased the debts, instructed Plaintiff not to send future payments to FNBO,

informed Plaintiff that already-sent payments would be forwarded to ARI and CAM, and instructed Plaintiff to direct questions about his account balances to ARI and CAM. (Id. ¶¶ 13–15, 25–27).

The only reasonable inference that can be drawn based on these allegations, is that ARI and CAM are not false names used by FNBO. (See, 13–15, 22–23, 25–27, 29–30, 32–33, 35–37, 94). Plaintiff has made no allegations to the contrary.[11] (See, Am. Compl. [Docket No. 9]). Nor has Plaintiff pleaded any facts that indicate ARI or CAM were false names used by FNBO, or upon which the Court can reasonably draw such an inference. (See, Id.). Therefore, Plaintiff has not demonstrated that FNBO is a debt collector under the third definition. See, 15 U.S.C. § 1692a(6); , Preferred Platinum Plan, Inc., 923 F. Supp. 2d at 1171; Medica Self-Insured, 2007 WL 1385589, at *3.

Accordingly, the Court finds that Plaintiff has not demonstrated Defendant FNBO is a "debt collector." See, 15 U.S.C. 1692a(6). Even in making all reasonable inferences in favor Plaintiff, the allegations in the Amended Complaint, [Docket No. 9], indicate FNBO is a creditor. See, 15 U.S.C. § 1692a(4). Thus, Plaintiff has not shown that the FDCPA applies to FNBO. See, Heroux, 2018 WL 2018069, at *3 ; Lansing, 2013 WL 5436913, at *4. Consequently, Plaintiff has failed to state a claim upon which relief can be granted against FNBO under a theory of direct liability for alleged FDCPA violations.

For the forgoing reasons, the Court recommends that Counts II, III, V, VII, and the "class allegations," as alleged against Defendant FNBO, be **dismissed without prejudice**.[12]

---

[11] Plaintiff argues in opposition to the present motion that there is a question of fact as to whether FNBO "holds an interest in" ARI or CAM. (Mem. in Opp'n [Docket No. 26], at 7). However, Plaintiff's Amended Complaint does not raise any factual allegations to that effect. (See, Am. Compl. [Docket No. 9]). Consequently, Plaintiff's argument is not supported by the existing record, hence the Court finds it unpersuasive.

[12] See, e.g., Favors, 2019 WL 3769710, at *5–7 (granting the defendant's 12(b)(6) motion to dismiss and dismissing the plaintiff's FDCPA claims without prejudice where the plaintiff failed to allege the defendant was a "debt collector").

### ii. Vicarious Liability

In Counts IV, VI, and VIII, Plaintiff asserts that FNBO is vicariously liable for various FDCPA violations committed by Goerlitz Law. (See, Id. ¶¶ 39, 42, 60, 66, 80–82, 89–91, 99–102).

Generally, "the fact that a creditor employs a debt collector to recover its debts does not make the creditor vicariously liable for the acts of the debt collector." Bohner v. LHR, No. 10-cv-4621 (DWF/LIB), 2011 WL 4472621, at *4 (D. Minn. Aug. 9, 2011), report and recommendation adopted by 2011 WL 4460394 (D. Minn. Sep. 26, 2011); see also, Kelly v. Aman Collection Servs., No. 03-6091 (DWF/JSM), 2005 WL 8162869, at *15 (D. Minn. Jan. 7, 2005), report and recommendation adopted as modified by 2005 WL 8162868 (D. Minn. Mar. 23, 2005) (finding the defendant lender could not be "vicariously liable for the actions of its debt collectors" because "entities who seek to collect their own debts are not subject to the FDCPA"). Nonetheless, an exception exists whereby "[i]t is possible 'that vicarious liability may attach in the context of an attorney-client relationship where both the attorney and client are debt collectors.'" Boldon v. Messerli & Kramer, P.A., 92 F. Supp. 3d 924, 934 (D. Minn. 2015) (quoting Racek v. Gurstel Chargo, P.A., No. 12-cv-380 (DWF/SER), 2013 WL 4838900, at *5 (D. Minn. Sept. 11, 2013)).

Here, Plaintiff has alleged that "Goerlitz Law, PLLC is a law firm hired by FNN and FNBO as a 3rd party debt collector with regard to the alleged debts claimed to be owed FNBO by Plaintiff." (Am. Compl. [Docket No. 9] ¶ 4.2). Because vicarious liability does not generally attach to one who hires a debt collector, FNBO cannot be vicariously liable for the alleged FDCPA violations of Goerlitz Law unless the exception applies. See, Boldon, 92 F. Supp. 3d at 934; Bohner, 2011 WL 4472621, at *4; Kelly, 2005 WL 8162869, at *15. Therefore, to survive the present 12(b)(6) Motion to Dismiss, Plaintiff must have pleaded sufficient facts to demonstrate that both FNBO and Goerlitz Law are debt collectors. See, Boldon, 92 F. Supp. 3d at 934.

As explained above, Plaintiff has not demonstrated Defendant FNBO is a "debt collector" as defined by the FDCPA. Thus, the exception allowing for vicarious liability does not apply in the present case. See, Boldon, 92 F. Supp. 3d at 934. And FNBO cannot be held vicariously liable for the alleged FDCPA violations of Goerlitz Law. See, Bohner, 2011 WL 4472621, at *4; Kelly, 2005 WL 8162869, at *15. Therefore, Plaintiff has failed to state a claim upon which relief can be granted against FNBO under a theory of vicarious liability for Goerlitz Law's alleged FDCPA violations.

For the foregoing reasons, the Court should recommend that Counts IV, VI, and VIII, as alleged against Defendant FNBO, be **dismissed without prejudice**.[13]

### III.  CONCLUSION

For the foregoing reasons, **IT IS HEREBY RECOMMENDED THAT:**

1. Defendant First National Bank of Omaha's Motion to Dismiss, [Docket No. 12], be **GRANTED** and that Counts II–VIII, and the class allegations, as alleged against Defendant First National Bank of Omaha in the above captioned matter, be **DISMISSED without prejudice.**

Date: January 3, 2020                                   **BY THE COURT:**

                                                        s/Leo I. Brisbois
                                                        Leo I. Brisbois
                                                        U.S. MAGISTRATE JUDGE

---

[13] See, e.g., Favors, 2019 WL 3769710, at *5–7 (granting the defendant's 12(b)(6) motion to dismiss and dismissing the plaintiff's FDCPA claims without prejudice where the plaintiff failed to allege the defendant was a "debt collector").